UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COLORADO BOXED BEEF COMPANY,

    Plaintiff,

    v.                                        Case No.:  8:07-cv-00223-T-24-MAP

G. MICHAEL COGGINS, ROBERT J.
ZEMAN, and SHERWOOD FOOD
DISTRIBUTORS,

    Defendants.

_____/

**ORDER**

This cause comes before the Defendants' Motion to Transfer Venue (Doc. No. 16) and Alternative Motion for a Stay of Proceedings (Doc. No. 17). Plaintiff opposes the motions. (Doc. No. 23). The Court held a hearing on these motion on March 22, 2007.

**I. Factual Background**

The following facts are derived primarily from Plaintiff's complaint and attachments thereto, but they also come from other documents filed in this case and statements made at the hearing: Plaintiff Colorado Boxed Beef Company ("CBBC") is a Florida corporation with its principal place of business in Florida. CBBC is a wholesale distributor of meats and grocery items. Since 1997, Defendants G. Michael Coggins and Robert Zeman served as the highest ranking management employees in CBBC's Atlanta division.

In connection with their employment, Zeman and Coggins signed employment agreements and non-competition and confidentiality agreements. (Doc. No. 2, Ex. A-D). Generally, the non-competition and confidentiality agreements provide that Coggins and Zeman

agreed that for a period of two years after their employment was terminated, they would not: (1) disclose to others, or use for their own benefit, CBBC's confidential information, (2) be employed by, or render aid or advice to, any business entity located east of the Mississippi River that was in the same business as CBBC, (3) solicit current or prospective customers of CBBC, or (4) solicit employees of CBBC.

Paragraph eleven of the employment agreements incorporates the terms of the non-competition and confidentiality agreements into the employment agreements. Paragraph eighteen of the employment agreements provides: "This Agreement shall be governed by the laws of the State of Florida. The parties hereby consent to the jurisdiction of the State of Florida in any litigation arising out of this Agreement and agree that such litigation shall be exclusively initiated and maintained in Polk County, Florida." Paragraph fifteen of the employment agreements provides: "Employee's employment, and all of the rights and responsibilities of the parties hereunder (except only for said notes), shall terminate in the event that [CBBC] is dissolved or the Atlanta Division ceases doing business as a viable profit-making division of [CBBC]."

In 2006, the Atlanta division of CBBC had difficulty servicing all of its customers. CBBC considered selling its Atlanta division to Defendant Sherwood Food Distributors ("Sherwood"). In connection with the negotiations, Sherwood and CBBC entered into a confidentiality agreement, which provided that any litigation to enforce the agreement may be brought in the courts of the State of Florida. (Doc. No. 2, Ex. E). By the end of November 2006, negotiations between Sherwood and CBBC ended.

On December 4, 2006, CBBC terminated Coggins and Zeman's employment. CBBC

gave three reasons for their terminations, including that the Atlanta division had ceased doing business as a viable profit-making division of CBBC. (Doc. No. 16, Ex. K). Thereafter, on February 24, 2007, Sherwood hired Coggins and Zeman. Coggins became the General Manager of Sherwood's Atlanta Division, and Zeman became the Division Controller. Sherwood competes with the Atlanta division of CBBC. CBBC contends that Sherwood is stealing its employees and customers and that Zeman and Coggins are helping Sherwood do this by violating their employment agreements and non-competition and confidentiality agreements.

## II.  Procedural History

CBBC filed two lawsuits relating to these allegations. First, on January 10, 2007, CBBC filed the instant case in state court in Polk County, Florida. In the instant case, which was removed to this Court on February 2, 2007, CBBC alleges the following claims: breach of contract against Coggins and against Zeman relating to their alleged violation of the non-competition, non-solicitation, and confidentiality provisions of their employment agreements; breach of the confidentiality agreement by Sherwood; breach of fiduciary duty and loyalty, tortious interference, misappropriation of trade secrets, unfair competition, fraud, and unjust enrichment against Coggins and Zeman; and a claim for attorneys' fees against all Defendants. Thereafter, on March 13, 2007, CBBC filed a motion for a temporary restraining order against Coggins and Zeman in this case, in which it requested that the Court enjoin Zeman and Coggins from (1) working for or assisting Sherwood or any other competitor in any state east of the Mississippi River, (2) disclosing or using CBBC's confidential information, and (3) soliciting or encouraging CBBC's employees or customers from terminating their relationships with CBBC.

The day after CBBC filed the Florida lawsuit, it filed another lawsuit in Georgia state

court against Sherwood. Sherwood removed the case on February 14, 2007, and the case is currently pending in the Northern District of Georgia. In the Georgia case, CBBC asserts the following claims against Sherwood relating to its competition with CBBC's Atlanta division: tortious interference, misappropriation of trade secrets, violation of Georgia's Uniform Deceptive Trade Practices Act, unfair competition, unjust enrichment, and attorneys' fees. Sherwood asserted a counterclaim against CBBC in the Georgia case, seeking a declaratory judgment that Coggins and Zeman's non-competition agreements are unenforceable. Zeman and Coggins have filed a motion to intervene as counterclaim plaintiffs in the Georgia case.

Currently pending before the Northern District of Georgia court is a motion for a preliminary injunction against Sherwood that CBBC filed in Georgia state court on January 11, 2007. In the motion for preliminary injunction, CBBC seeks to enjoin Sherwood from making misrepresentations about CBBC and from raiding CBBC's employees. The case has been heavily litigated in the Northern District of Georgia. The court ordered expedited discovery, held an evidentiary hearing on the motion for preliminary injunction on March 8th and 9th, and scheduled closing arguments on the motion for preliminary injunction for March 23rd.

### III.  Motion to Transfer

Defendants filed the instant motion to transfer this case to the Northen District of Georgia, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

When considering whether to transfer a case pursuant to § 1404(a), a court considers the following factors: "(1) the convenience of the witnesses; (2) the location of relevant documents

and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005)(citation omitted). However, a forum selection clause is a significant factor that figures centrally in the determination, and venue mandated by a valid forum selection clause will rarely be outweighed by other § 1404(a) factors. See In re Rioch Corp., 870 F.2d 570, 573 (11th Cir. 1989)(citation omitted).

The burden is on Defendants to demonstrate that this case should be transferred to the Northern District of Georgia in the interests of convenience and justice under § 1404(a). See id. The Court notes that "[s]ection 1404(a) provides for transfer to a more convenient forum, but not to one which is likely to prove equally convenient or inconvenient." Johnston v. Foster-Wheeler Constructors, Inc., 158 F.R.D. 496, 503 (M.D. Ala. 1994)(citation omitted). Furthermore, "[i]n determining the propriety of transfer, the Court must give considerable weight to Plaintiff's choice of forum. Only if Plaintiff's choice is clearly outweighed by considerations of convenience, cost, judicial economy, and expeditious discovery and trial process should this Court disregard the choice of forum and transfer the action." See Response Reward Systems, L.C. v. Meijer, Inc., 189 F. Supp.2d 1332, 1339-40 (M.D. Fla. 2002)(citations omitted). For the reasons stated below, the Court finds that the § 1404(a) factors weigh strongly in favor of transfer, and as such, this case should be transferred to the Northern District of Georgia.

The first step in the Court's analysis is to determine whether this case could have been

filed in the Northen District of Georgia. Since the alleged acts occurred in the Northern District of Georgia, the Court finds that the case could have been filed there.

The next step in this Court's analysis is to consider the § 1404(a) factors and the forum selection clause. While this Court acknowledges that valid forum selection clauses are given significant weight, the Court finds that the forum selection clause in Coggins and Zeman's employment agreements is not enforceable.

The forum selection clause contained in paragraph eighteen of the employment agreements provides that "any litigation arising out of this Agreement . . . shall be exclusively initiated and maintained in Polk County, Florida." However, paragraph fifteen of the employment agreements provides that "all of the rights and responsibilities of the parties hereunder . . . shall terminate in the event that . . . the Atlanta Division ceases doing business as a viable profit-making division." One of the reasons given by CBBC for terminating Zeman and Coggins' employment was that the Atlanta Division had ceased doing business as a viable profit-making division of CBBC. Since the Atlanta Division had ceased doing business as a viable profit-making division of CBBC, the rights under the employment agreements have terminated, including the right to limit the resolution of the parties' dispute to a particular forum.

Even if the forum selection clause was enforceable, the Court finds that it still would not be given significant weight in this analysis, because it mandates a state court as the agreed-upon forum.[1] Since the contractually agreed-upon forum in the forum selection clause in the

---

[1] Since the only courts located in Polk County, Florida are state courts, the forum selection clause mandates that a state court located in Polk County is the agreed-upon forum. See, e.g., Sizemore v. Able Body Temp. Servs, 981 F. Supp. 1451, 1454 (M.D. Al. 1997)(construing a forum selection clause that provided that venue shall lie exclusively in Pinellas County, Florida to limit the forum to state courts located in Pinellas County because there were no federal courts located in Pinellas County). The Court rejects CBBC's argument

employment agreements is not a forum that the Court can transfer this case to under § 1404(a), the Court finds that the contractually agreed-upon forum should not be given significant weight in the Court's analysis. Furthermore, the Court notes that CBBC stated at the hearing that the forum selection clause in the employment agreements only applies to two of the ten claims asserted in CBBC's complaint (the breach of contract claims against Zeman and Coggins). (Hearing transcript, p. 29).

As explained below, based on the § 1404(a) factors, the Court finds that this case should be transferred to the Northern District of Georgia. In support of their contention that the case should be transferred, Defendants argue: (1) All of the alleged acts occurred in Georgia; (2) It would be more convenient for the parties to litigate in Georgia, because Coggins, Zeman, and Sherwood are Georgia residents; (3) The employee witnesses of CBBC and Sherwood are located in Georgia (and making them travel to Florida would disrupt business operations); (4) The vast majority of non-party witnesses (other competitors[2], former CBBC employees, and

---

that based on <u>Links Design, Inc. v. Lahr</u>, 731 F. Supp. 1535 (M.D. Fla. 1990), the forum selection clause in the instant case mandates venue in state court or a federal court that encompasses Polk County. In <u>Links</u>, the forum selection clause provided that "the proper venue . . . shall be in Polk County, Florida." <u>Id.</u> at 1536. The <u>Links</u> court found the provision to be ambiguous, because it was unclear whether a claim controlled by the forum selection clause had to remain in state court in Polk County or whether it could be removed to a federal district court encompassing Polk County. <u>See id.</u> No such ambiguity is present in the instant case, because the forum selection clause provides that litigation shall be exclusively initiated and *maintained* in Polk County, Florida.

[2]Defendants contend that the testimony of other competitors who considered purchasing CBBC's Atlanta division will be relevant to show why Sherwood did not purchase the Atlanta division. Additionally, Defendants contend that the testimony of other competitors will be relevant regarding why former CBBC employees left CBBC to be employed by competitors.

warehouse operators) are located in Georgia;[3] (5) Defendants will be unable to compel the testimony of non-party witnesses that reside in Georgia, because they reside more than 100 miles away from this Court; (6) The Georgia lawsuit filed by CBBC is based on the same facts as this case, and as such, it is in the interest of judicial economy to try this case there (especially given that the Georgia case has progressed further than this case); (7) The resolution of this dispute affects third-party customers and distributors located in the Atlanta market, as well as employment opportunities for citizens of Atlanta; (8) The tort claims are governed by Georgia law; and (9) This Court is one of the busiest federal district courts in the nation.  The Court finds that these factors show that the balance of convenience weighs strongly in favor of transfer.

The Court notes that a plaintiff's choice of forum should be given deference, that CBBC is headquatered in Florida, and that CBBC contends that its senior management employees who are potential witnesses work and reside in Florida.  However, since CBBC will already be litigating its claims against Sherwood in the Northern District of Georgia due to filing that lawsuit in Georgia (which is based on the same set of facts as this case), CBBC can hardly argue that it will be inconvenienced by having to litigate this case in the Northern District of Georgia

---

[3]For example, Defendants have submitted the affidavits of three former customers of CBBC who state that they could testify regarding (1) why they no longer do business with CBBC, (2) why they do business with Sherwood, and (3) whether Coggins and/or Sherwood agents made misrepresentations to CBBC customers. (Doc. No. 16, Ex. E-G).  These former CBBC customers state that they would be greatly inconvenienced if they had to travel to Florida to testify. (Doc. No. 16, Ex. E-G).

Defendants have also submitted the affidavit of Richard Carver, the CEO and President of a warehouse company that warehoused CBBC's inventory in November of 2006. (Doc. No. 16, Ex. P).  Carver states in his affidavit that (1) he has knowledge regarding CBBC's allegations regarding the coordination of inventory to his warehouse space in November 2006; and  (2) it has employed and currently employs several former CBBC employees and may be able to offer testimony concerning the reasons that these employees left CBBC. (Doc. No. 16, Ex. P).  Carver states that he would be greatly inconvenienced if he had to travel to Florid to testify. (Doc. No. 16, Ex. P).

also. Furthermore, judicial economy is served by having both cases litigated in the same court.

The Court also notes that the convenience of the witnesses weighs strongly in favor of the Northern District of Geogia. Since the alleged wrongful acts occurred in the Northen District of Georgia, most of the witnesses and documentary evidence will be located there. Furthermore, the fact that this Court is located more than 100 miles away from Georgia is another factor that weighs in favor of transfer.

Based on the above, the Court finds that the §1404(a) factors weigh heavily in favor of transferring this case to the Northen District of Georgia. As such, the Court will grant Defendants' motion to transfer this case.

## IV.  Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)  Defendants' Motion to Transfer Venue (Doc. No. 16) is **GRANTED;**

(2) The Clerk is directed to transfer this case to the Atlanta Division of the Northern District of Georgia;

(3) Defendants' Alternative Motion for a Stay of Proceedings (Doc. No. 17) is **DENIED AS MOOT**; and

(4) The Clerk is directed to close this case.

**DONE AND ORDERED** this 23rd day of March, 2007.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

9